## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ESTATE OF DALANEO MARTIN** | : | |
| **Through Personal Representative Tyrell Jones** | : | |
| 612 Keefer Place, NW | : | |
| Washington, DC 20010 | : | |
| *Plaintiff,* | : | Case No.: _____ |
| | : | |
| vs. | : | |
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| **Department of the Interior,** | : | |
| **US Park Police** | : | |
| **Doug Burgum, Secretary** | : | |
| 1849 C Street, NW | : | |
| Washington, DC 20240 | : | |
| | : | |
| and | : | |
| | : | |
| **JOHN DOE, US PARK POLICE OFFICER** | : | |
| **SERVE: JESSICA M. E. TAYLOR, CHIEF** | : | |
| 1100 Ohio Dr, SW | : | |
| Washington, DC 20024 | : | |
| *Defendants.* | : | |

## <u>COMPLAINT</u>

**COMES NOW**, the Plaintiff, the Estate of Dalaneo Martin (hereinafter "the Estate" or "Plaintiff"), through personal representative, Tyrell Jones (hereinafter "Mr. Jones" or "Plaintiff") through Counsel, files this Complaint against Defendants the United States of America (hereinafter "UNITED STATES") and John Doe, U.S. Park Police Officer (hereinafter "Officer Doe" or "Officer"), pursuant to the Constitution of the United States of America and the Federal Tort Claims Act ("FCTA"), 28 U.S.C. §§ 1346(b), 2671 – 2680, for personal injuries and death caused by the negligent, grossly negligent, unconstitutional, and wrongful acts and/or omissions of Defendants acting within the scope of their employment, claim damages, demand judgment, and in support thereof, state as follows:

## SUBJECT MATTER JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to the Federal Tort

Claims Act, 28 U.S.C. § 1346(b)(1), which confers exclusive jurisdiction on the United States

District Courts for civil actions on claims against the United States for money damages for injury

or death caused by the negligent or wrongful act or omission of any employee of the Government

while acting within the scope of his office or employment, under circumstances where the United

States, if a private person, would be liable in accordance with the law of the place where the act

or omission occurred.

2.      Jurisdiction is also proper under 28 U.S.C. § 1331 as the action arises under federal law.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b) and § 1391(b) because all

or a substantial part of the events or omissions giving rise to the claims occurred in the District of

Columbia, and the defendants are federal agencies and employees whose actions and

employment are based in this district.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

4.      On May 21, 2024, pursuant to 28 U.S.C. § 2675(a), Plaintiffs presented written notice,

specifically a completed Standard Form Notice SF-95 together with an addendum and all

pertinent supportive documents, of their administrative tort claim to the appropriate federal

agencies, the Department of Interior ("DOI"), and the United States Park Police, through

Plaintiff's legal representative. To date, there has not been a formal denial letter sent but more

than 6 months have passed since the date of sending the Standard Form SF-95 Notice.

## PARTIES

5.      The Plaintiff, Tyrell Jones, is the Personal Representative of Dalaneo Martin who, at the

time of his murder, was a person of seventeen years of age, a citizen of the United States and resident of the District of Columbia. Mr. Martin is the victim of a deadly assault that occurred in the District of Columbia by the hands of a Metropolitan and U.S. Park Police officers.

6.    Defendant, United States of America, is sued under the FTCA for the acts and omissions of its employees, agents, and agencies, including the Department of the Interior and the United States Park Police, acting within the scope of their federal employment.

7.    Defendant, Department of the Interior, is a United States Federal Agency overseeing the United States Park Police. At all relevant times, the US Park Police employed Officer Doe who killed Mr. Martin.

8.    Defendant, Jessica M.E. Taylor in her official capacity as Chief of Police for the U.S. Park Police department is the primary law enforcement agency for the federal parks and lands within the District of Columbia.

9.    Defendant, U.S. Park Police Officer John Doe, was, at all relevant times, employed by the U.S. Park Police.

## FACTUAL ALLEGATIONS

10.    The Plaintiffs allege and supports by evidence facts against the Defendants herein that arise to the level of Fourth Amendment violations due to excessive force, wrongful death, negligence, and gross negligence that resulted in murder and corruption that was physically and emotionally traumatizing that violate any sense of human dignity within the District of Columbia (hereinafter the "District").

11.    On or around March 18, 2023, Metropolitan police officers observed a white Hyundai parked in a residential neighborhood with Mr. Martin asleep in the driver's seat.

12.    Metropolitan police officers engaged U.S. Park Police to assist in any further engagement

with the vehicle and the then asleep Mr. Martin.

13.     Approximately four (4) officers initially approached the vehicle. Upon this initial

approach one officer attempted to open the driver's side door by pulling the on the exterior door

handle. At that time officers realized that the car doors were locked the officers retreated from

the car and reconvened approximately two-three vehicles behind the vehicle in which Mr. Martin

was asleep.

14.     Once the officers initially retreated from the vehicle. The officers spoke amongst

themselves to devise a plan to gain entry into the vehicle with the sleeping Mr. Martin within.

15.     It was discussed and upon investigation, something to the effect of the following was

stated amongst officers on the scene:

   a.   U.S. Park Police officers believed the vehicle was off, Metropolitan Police

        believed the vehicle was on but in park;

   b.   Metropolitan Police stated Mr. Martin seems to be unarmed and officers believed

        he was unarmed;

   c.   An officer will break a window of the vehicle in;

   d.   The back window is broken so just cut out the plastic to be more quiet,

   e.   Unlock the doors quietly and then someone just yank him [Mr. Martin] out the

        vehicle;

   f.   *But let's wait to see if he [Mr. Marin] gets startled. If he [Mr. Martin] does get*

        *startled, just let him go, but don't get inside that car;*

   g.   *A Metropolitan Police stated that if he [Mr. Martin] takes off, he takes off, but*

        *just do not get caught inside that car, please do not get caught inside;*

   h.   *If he [Mr. Martin] takes off he takes off so be it, either way it's an interesting*

*story*.

16.     Immediately after officers agreed to the plan referenced in the previous paragraph approximately four (4) officers approached the vehicle in which Mr. Martin was sleeping within for a second time.

17.     Upon the second approach of the vehicle, an Officer breached the interior of the vehicle on the backseat passenger door by cutting back the plastic covering on the backseat passenger window.

18.     Once the Officer cut the plastic window covering he then unlocked that door from the inside and opened the backseat passenger side door of the vehicle.

19.     An Officer then unlocked all the doors in the vehicle. Mr. Martin was still asleep within the vehicle.

20.     Once all vehicle doors were unlocked, the an Officer next to the driver's side door yanked the driver door open and the officer on the backside passenger door entered the vehicle on the backseat passenger side.

21.     Simultaneously both officers from different directions began to yell, "POLICE DON'T MOVE" while pulling Mr. Martin in opposite directions. One Officer pulling from the driver's side front door, and the other from behind Mr. Martin on backseat passenger side.

22.     Mr. Martin was startled from his sleep and reacted by pressing down on the gas pedal.

23.     The vehicle proceeded forward and down the street.

24.     U.S. Park Police Officer John Doe[1] remained in the vehicle backseat passenger side.

25.     U.S. Park Police Officer John Doe pulled out his firearm and pointed it towards the back

---

[1] Plaintiff Counsel has diligent tried to uncover the identity of the shooting officer without success. The only publicly available information has been redacted and the Defendant has refused all requests for the same under the Freedom of Information Act.

of Mr. Martin's head, neck and back.

26.    U.S. Park Police Officer John Doe stated, "Stop or I'll shoot." Immediately thereafter, the

officer discharged his weapon multiple times into the back of Mr. Martin.

27.    As a result of the shooting, Mr. Martin was struck and the vehicle crashed into a nearby

home. Mr. Martin was later pronounced dead.

28.    Mr. Martin's cause of death was from multiple gunshot wounds.

## COUNT I – ESTATE V. U.S. PARK POLICE OFFICER JOHN DOE
### *Bivens* Action
### Fourth Amendment - Excessive Force

29.    The Plaintiffs adopt and incorporate each and every allegation above as if fully stated

herein.

30.    At all times relevant hereto, Defendant U.S. Park Police Officer John Doe was a person

acting under color of federal law as an officer of the United States Park Police.

31.    At all times relevant hereto, Dalaneo Martin had rights under the Fourth Amendment to

the United States Constitution to be free from unreasonable and excessive force.

32.    By unlawfully and intentionally discharging his firearm multiple times into the back of

Dalaneo Martin without legal justification or immediate threat of serious bodily harm to the

officer or others, Defendant U.S. Park Police Officer John Doe violated Mr. Martin's clearly

established constitutional rights under the Fourth Amendment to be free from excessive force.

33.    By failing to provide any reasonable opportunity for Mr. Martin to comply with police

commands, and by escalating the encounter in contravention of the agreed-upon plan to allow

Mr. Martin to leave the scene if startled, Defendant U.S. Park Police Officer John Doe further

violated Mr. Martin's clearly established constitutional rights under the Fourth Amendment.

34.    As alleged herein, all actions by Defendant U.S. Park Police Officer John Doe were

objectively unreasonable, excessive, and without any lawful justification or excuse.

35.    The actions of Defendant U.S. Park Police Officer John Doe, as alleged herein, give rise

to a cause of action and civil remedy under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388

(1971), for damages resulting from the violation of Mr. Martin's Fourth Amendment rights.

36.    This case does not present a new context that is meaningfully different from the existing

scope of remedies under *Bivens*, as *Bivens* has been applied to Fourth Amendment claims arising

from federal agents' use of excessive force during detentions and arrests, including in the context

of traffic stops and seizures.

37.    The actions by Defendant U.S. Park Police Officer John Doe alleged herein did not

involve a national security concern that would weigh against extending a *Bivens* remedy to the

Plaintiff, nor would this *Bivens* action interfere with the functioning of the Executive Branch.

38.    At all times relevant hereto, the unconstitutional acts, as alleged above, were carried out

by Defendant U.S. Park Police Officer John Doe acting under color of law.

39.    Defendant U.S. Park Police Officer John Doe subjected Mr. Martin to these deprivations

of civil rights maliciously and with reckless disregard for, or with deliberate indifference to,

whether Mr. Martin's civil rights would be violated by his actions.

40.    Defendant U.S. Park Police Officer John Doe's acts and omissions as alleged herein were

intentional, wanton, willful, malicious, and were done with a blatant and reckless disregard for

Mr. Martin's constitutional rights.

41.    The actions of Defendant U.S. Park Police Officer John Doe in intentionally, wantonly,

willfully, and maliciously discharging his firearm into Mr. Martin's back, resulting in Mr.

Martin's death, subjects Defendant to punitive damages.

42.    As a  direct and proximate result of Defendant Joh Doe's acts and omissions alleged

herein, Mr. Martin suffered severe physical injuries leading to his death, conscious pain and suffering, emotional distress, and other damages; and the Estate and next of kin have suffered and will continue to suffer profound damages.

WHEREFORE, Plaintiffs, pray for judgment against Defendants in the amount of $50,000,000.00 in compensatory damages and $50,000,000.00 in punitive damages.

## COUNT II - ESTATE V. ALL DEFENDANTS
### Federal Tort Claims Act "FTCA" - Gross Negligence

43.    The Plaintiffs adopt and incorporate each and every allegation above as if fully stated herein.

44.    This claim is brought against the United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 and 28 U.S.C. § 1346(b)(1). The FTCA provides a limited waiver of sovereign immunity, rendering the United States liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment, "in the same manner and to the same extent as a private individual under like circumstances" in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2674.

45.    Under District of Columbia law, gross negligence is defined as an extreme departure from the ordinary standard of care or a failure to exercise even slight care that would shock fair-minded persons. *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997).

46.    At all relevant times, the United States, by and through its employees, including Officer John Doe, owed a duty to Dalaneo Martin to exercise reasonable care in the planning and execution of law enforcement activities. This duty includes, but is not limited to, the obligation to act in accordance with applicable law, departmental policies, and established standards of police conduct, and to refrain from the use of unnecessary or excessive force in interactions with

civilians. Under the FTCA, the United States is held to the same standard of care as a private person under like circumstances in the District of Columbia. 28 U.S.C. § 1346(b)(1). *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997).

47.     The United States, by and through its employees, breached the duty of care owed to Dalaneo Martin by engaging in conduct that constituted a gross deviation from the standard of care required of reasonable law enforcement officers under similar circumstances. Specifically, Officer John Doe and other federal officers:

    a.  Employed unnecessary and excessive deadly force against Mr. Martin, including discharging a firearm into his back multiple times while he was attempting to flee in a vehicle, despite the absence of any immediate threat of serious bodily harm to the officers or others;

    b.  Failed to de-escalate the situation or utilize less-lethal alternatives, contrary to established law enforcement protocols and the agreed-upon plan to allow Mr. Martin to leave the scene if startled, thereby disregarding safer and reasonable alternatives to the use of deadly force;

    c.  Recklessly entered the vehicle, a deviation of the operational plan and explicit instructions from the commanding officer on scene, thereby escalating the risk to all parties involved;

    d.  Discharged a firearm at Mr. Martin without providing a reasonable opportunity for him to comply with police commands, and without conducting a proper assessment of the necessity or proportionality of such force under the circumstances.

48. Mr. Martin was not protected by officers acting thin the District of Columbia on March

18, 2023, but was rather victimized and killed at the hands of the people who should have been there to protect him as he was sleeping.

49. These acts and omissions, individually and collectively, represent an extreme departure from the ordinary standard of care and constitute gross negligence under District of Columbia law.

50. The grossly negligent acts and omissions of Officer John Doe and other federal officers, as described above, were the direct and proximate cause of the injuries and death suffered by Dalaneo Martin. The officers' extreme departure from the standard of care created a foreseeable and substantial risk of harm, and but for their conduct, including the unnecessary use of deadly force, failure to de-escalate, and reckless decision-making; Mr. Martin would not have sustained fatal injuries. Accordingly, the causal connection between the officers' breach of duty and the resulting harm satisfies the requirements for liability under the FTCA and District of Columbia law.

51. Under District of Columbia law, gross negligence is defined as an extreme departure from the ordinary standard of care, or a failure to exercise even slight care, such that the conduct would shock fair-minded persons. *District of Columbia v. Walker*, 689 A.2d 40, 44 (D.C. 1997). This standard requires more than ordinary inadvertence or mistake. It encompasses conduct that demonstrates a reckless disregard for the safety and rights of others. The FTCA incorporates the law of the place where the act or omission occurred, and thus the District of Columbia's definition of gross negligence governs this claim. 28 U.S.C. § 1346(b). *Id.*

52. Pursuant to the FTCA, 28 U.S.C. §§ 2671–2680 and 28 U.S.C. § 1346(b)(1), the United States is liable for the grossly negligent acts and omissions of its employees committed

within the scope of their employment, to the same extent as a private individual would be under the law of the District of Columbia. The conduct of Officer John Doe and other federal officers, as alleged herein, occurred during the course and within the scope of their official duties as law enforcement officers. Accordingly, the United States is responsible for the gross negligence of its officers under the FTCA and is subject to liability for the resulting injuries and death of Dalaneo Martin, as would be imposed upon a private person under like circumstances in the District of Columbia. *Id*.

53. As a direct and proximate result of the grossly negligent acts and omissions of the United States, by and through its employees, the Estate is entitled to damages including but not limited to pain and suffering, emotional suffering, compensatory damages, and punitive damages.

WHEREFORE, The Plaintiffs pray for judgment against Defendants in the amount of $50,000,000.00 in compensatory damages and $50,000,000.00 in punitive damages.

## <u>COUNT III - ESTATE V. ALL DEFENDANTS</u>
**Federal Tort Claims Act "FTCA" - Ordinary Negligence**

54. The Plaintiffs adopt and incorporate each and every allegation above as if fully stated herein.

55. This claim is brought against the United States of America pursuant to the FTCA, 28 U.S.C. §§ 2671–2680 and 28 U.S.C. § 1346(b)(1), for money damages for personal injury and death caused by the negligent acts or omissions of federal employees acting within the scope of their employment.

56. At all relevant times, the United States, by and through its employees, including officers of the United States Park Police, owed a duty to Dalaneo Martin to exercise reasonable care in the planning and execution of law enforcement activities within the District of

Columbia.

57. The FTCA, 28 U.S.C. §§ 2671–2680, provides a limited waiver of sovereign immunity, rendering the United States liable for the negligent acts or omissions of its employees committed within the scope of their employment, in the same manner and to the same extent as a private individual under like circumstances, in accordance with the law of the place where the act or omission occurred.

58. The FTCA incorporates the substantive law of the jurisdiction where the alleged tort occurred. Thus, the standard of care and elements of negligence are governed by District of Columbia law for purposes of this claim.

59. Under District of Columbia law, every individual and entity, including law enforcement officers, is required to exercise the degree of care that a reasonably prudent person would exercise under similar circumstances to avoid foreseeable harm to others. The standard for ordinary negligence under District of Columbia law requires proof of a legal duty, a breach of that duty, causation, and damages.

60. Ordinary negligence is distinct from gross negligence in that it does not require an extreme departure from the standard of care, but rather a failure to act with the level of care that a reasonably prudent person would exercise under similar circumstances.

61. This standard of care applicable to law enforcement officers in the District of Columbia requires adherence to established protocols, departmental policies, and generally accepted practices for the use of force, de-escalation, and the protection of civilians during police encounters. *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003).

62. This duty includes the obligation to act reasonably, to refrain from the use of unnecessary or excessive force, and to take all reasonable steps to prevent foreseeable harm to

individuals encountered in the course of official duties. *Etheredge v. District of Columbia*, 635 A.2d 908 (D.C. 1993).

63. The United States, by and through its employees, including officers of the United States Park Police, breached the duty of reasonable care owed to Dalaneo Martin in the planning and execution of law enforcement activities on March 18, 2023.

64. The United States, through its agencies and employees, is held to the same standard of care as a private person under like circumstances, and is liable for injuries proximately caused by the negligent acts or omissions of its employees acting within the scope of their official duties.

65. The officers failed to act as reasonably prudent law enforcement officers would have under similar circumstances, including but not limited to:

   a. Employing unnecessary and excessive force against Mr. Martin by discharging a firearm into his back multiple times while he was attempting to flee in a vehicle, despite the absence of any immediate threat of serious bodily harm to the officers or others;

   b. Failing to de-escalate the situation or utilize less-lethal alternatives, contrary to established law enforcement protocols and the agreed-upon plan to allow Mr. Martin to leave the scene if startled;

   c. Recklessly entering the vehicle, in direct contravention of the operational plan and explicit instructions from the commanding officer on scene, thereby escalating the risk to all parties involved;

   d. Discharging a firearm at Mr. Martin without providing a reasonable opportunity for him to comply with police commands, and without conducting a proper

assessment of the necessity or proportionality of such force under the circumstances;

e.   And failing to adhere to departmental policies, established protocols, and generally accepted practices for the use of force, de-escalation, and the protection of civilians during police encounters.

66. These acts and omissions constitute a failure to exercise the degree of care that a reasonably prudent law enforcement officer would have exercised under similar circumstances, and represent a breach of the duty of ordinary care owed to Mr. Martin.

67. The officers' conduct, as described above, was not justified or privileged under the circumstances and fell below the standard of care required by law.

68. As a direct and proximate result of the negligent acts and omissions of the United States, by and through its employees, Dalaneo Martin suffered severe physical injuries leading to his death, as well as conscious pain and suffering, emotional distress, and other damages.

69. The harm suffered by Mr. Martin was a foreseeable consequence of the officers' failure to exercise reasonable care in the planning and execution of law enforcement activities, including the use of unnecessary and excessive force, failure to de-escalate, reckless entry into the vehicle, and failure to adhere to established protocols and departmental policies.

70. The officers' conduct created a substantial and foreseeable risk of serious injury or death to Mr. Martin, and the resulting harm was not the product of an intervening or superseding cause.

71. But for the negligent acts and omissions of the United States, by and through its employees, Mr. Martin would not have sustained fatal injuries or the associated damages alleged herein.

72. The causal connection between the breach of duty and the injuries and death suffered by Mr. Martin satisfies the requirements for liability under the FTCA and the law of the District of Columbia.

73. As a direct and proximate result of the negligent acts and omissions of the United States, by and through its employees, Dalaneo Martin suffered severe physical injuries leading to his death.

74. Mr. Martin experienced conscious pain and suffering, emotional distress, and mental anguish prior to his death as a result of the conduct of the officers.

75. The Estate of Dalaneo Martin has incurred and will continue to incur economic losses, including but not limited to funeral and burial expenses, loss of earnings and earning capacity, and other pecuniary losses resulting from Mr. Martin's untimely death.

76. The damages sustained by the Estate and next of kin are the natural, foreseeable, and direct consequence of the United States' failure to exercise reasonable care in the planning and execution of law enforcement activities.

77. Accordingly, if the conduct of the United States Park Police officers, as alleged herein, constitutes ordinary negligence under District of Columbia law, the United States is subject to liability for all damages proximately resulting from such negligence, as permitted by the FTCA.

78. The Estate is entitled to recover compensatory damages for all physical, emotional, and economic injuries proximately caused by the ordinary negligence of the United States and its employees, as permitted under the FTCA and the law of the District of Columbia.

WHEREFORE, The Plaintiffs pray for judgment against Defendants in the amount of $50,000,000.00 in compensatory damages and $50,000,000.00 in punitive damages.

### COUNT IV – TYRELL JONES V. THE UNITED STATES OF AMERICA
**Federal Tort Claims Act "FTCA" – Negligent Hiring/Training/Supervision**

79.     The Plaintiffs adopt and incorporate each and every allegation above as if fully stated herein.

80.     Under the FTCA, the United States is liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment, "in the same manner and to the same extent as a private individual under like circumstances" in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 2674. The FTCA incorporates the substantive law of the District of Columbia for purposes of this claim.

81.     Under District of Columbia law, an employer has a duty to exercise reasonable care in the selection, training, and supervision of its employees. An employer may be held liable for negligent hiring, training, or supervision where the employer knew or should have known that an employee was unfit or posed a danger to others, and the employer's failure to take appropriate action proximately caused injury. *Peyton v. District of Columbia*, 100 A.3d 539, 546 (D.C. 2014). *Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 759 (D.C. 2001).

82.     Upon information and belief, Defendant United States of America knew or should have known Officer Doe behaved in a dangerous or otherwise incompetent manner; and armed with that actual and/or constructive knowledge, failed to adequately supervise or train Officer Doe, and their failure proximately caused the Plaintiff's injury. *Peyton v. District of Columbia*, 100 A.3d 154, 162 (D.C. 2014).

83.     Defendant United States, by and through the United States Park Police, as a federal law enforcement agency, owed a duty to the public, including Dalaneo Martin, to use reasonable care in the hiring, training, and supervision of its officers. This duty includes, but is not limited to, conducting adequate background checks, ensuring that officers receive proper and ongoing

training in the lawful use of force, de-escalation techniques, adherence to departmental policies and constitutional standards, and providing effective supervision and discipline to prevent foreseeable harm.

84.     On the date of the incident, Defendant United States of America's supervising officer(s) on scene had a clear line of sight and direct opportunity to observe Officer John Doe entering the vehicle, despite explicit instructions and an agreed-upon operational plan that no officer was to enter the vehicle if Mr. Martin became startled.

85.     The supervising officer(s) were present, aware of the plan, and in a position to monitor the actions of subordinate officers, including Officer John Doe. Nevertheless, the supervising officer(s) failed to intervene or prevent Officer John Doe from breaching the plan and entering the vehicle, even though this conduct was in direct contravention of the instructions given and created a foreseeable risk of escalation and harm. This failure of supervision was not merely systemic or policy-based, but constituted an immediate and operational lapse in oversight and control at the scene. The supervising officer(s) had both the authority and the duty to enforce compliance with the plan and to prevent subordinate officers from engaging in conduct that would endanger Mr. Martin and others. The failure to act in real time to prevent Officer John Doe from entering the vehicle was a direct and proximate cause of the escalation of the encounter and the resulting harm to Mr. Martin.

86.     Upon information and belief, Defendant United States, by and through the U.S. Park Police, breached its duty of care by failing to implement and enforce adequate policies and procedures for the hiring, training, and supervision of its officers. These systemic failures include, but are not limited to:

     a.   Failing to adequately screen and vet candidates for employment as law

enforcement officers, including failing to identify or address indicators of unfitness for duty or propensity for excessive force;

b. Failing to provide sufficient and effective training regarding the lawful use of force, de-escalation, crisis intervention, and compliance with constitutional and departmental standards;

c. Failing to supervise, monitor, and discipline officers to ensure compliance with established protocols and to address known or foreseeable risks of harm to civilians;

d. Failing to update or enforce policies and procedures in response to known deficiencies or prior incidents involving excessive force or misconduct by officers;

e. Failing, in the course of active supervision during the incident, to observe and prevent subordinate officers from breaching the agreed-upon plan and explicit instructions not to enter the vehicle, including the failure of the supervising officer(s) on scene to intervene when Officer John Doe entered the vehicle in direct contravention of those instructions, despite having a clear line of sight and opportunity to do so.

87. The acts and omissions of Defendant United States of America, by and through United States Park Police in negligently hiring, training, and supervising its officers created a foreseeable and substantial risk of harm to members of the public, including Dalaneo Martin.

88. The failure to properly vet, train, and supervise officers was a direct and proximate cause of the wrongful death of Mr. Martin, as it enabled and failed to prevent the use of

unnecessary and excessive force by Officer John Doe and others involved in the incident. Critically, the failure of supervision was not only systemic but also immediate and operational: the supervising officer(s) present on scene failed to monitor and control subordinate officers' actions in real time.

89. The United States is liable under the FTCA for the injuries and death suffered by Dalaneo Martin as a result of its negligent hiring, training, and supervision of U.S. Park Police officers, to the same extent as a private employer would be under the law of the District of Columbia. This liability extends not only to systemic failures in policy and training, but also to the immediate, operational failure of supervision by the supervising officer(s) present during the incident, which was a direct and proximate cause of the injuries and death suffered by Mr. Martin.

90. As a direct and proximate result of the United States' negligent hiring, training, and supervision, the Estate of Dalaneo Martin and his next of kin have suffered and will continue to suffer severe physical, emotional, and economic damages, including but not limited to pain and suffering, loss of life, loss of companionship, and other compensable injuries.

WHEREFORE, Plaintiffs, pray for judgment against the Defendants in the amount of $50,000,000.00 in compensatory damages and $50,000,000.00 in punitive damages.

### COUNT V – TYRELL JONES V. ALL DEFENDANTS
**Federal Tort Claims Act "FTCA" – Wrongful Death**

91.     The Plaintiffs adopt and incorporate each and every allegation above as if fully stated herein.

92.     The FTCA authorizes recovery for wrongful death caused by the negligent or wrongful

acts or omissions of federal employees acting within the scope of their employment, to the same extent as a private person would be liable under the law of the District of Columbia.

93.     Under D.C. Code § 16-2701, when the death of a person is caused by the wrongful act, neglect, or default of another, the personal representative of the decedent may maintain an action for the exclusive benefit of the decedent's next of kin.

94.     Within the District of Columbia, an action for Wrongful Death may be brought in the name of the personal representative of the deceased person within two (2) years after the death of the person injured. D.C. Code §16-2702.

95.     A Wrongful Death action in the District is when by injury the death of a person is caused by the wrongful act, neglect, or default of a persons actions. D.C. Code §16-2701.

96.     At all relevant times, the United States, by and through its employees, including officers of the United States Park Police, owed a duty to Dalaneo Martin to exercise reasonable care in the planning and execution of law enforcement activities, including the use of force, de-escalation, and adherence to established protocols and departmental policies.

97.     The United States, by and through its employees, breached this duty by engaging in grossly negligent and negligent acts and omissions, as set forth in Counts IV and V, including but not limited to the unnecessary and excessive use of deadly force, failure to de-escalate, reckless entry into the vehicle, and failure to provide a reasonable opportunity for compliance.

98.     Defendants' actions were grossly negligent in causing the death of Mr. Martin.

99.      Officer John Doe operating under USPP policy and General Orders deprived Mr. Martin of his rights by seizing his life without a reasonable basis to do so and thereby injuring him and depriving him of his liberty.

100.    Prior to discharging his weapon upon Mr. Martin, Officer John Doe failed to comport

with the devised plan of his fellow officers on scene, and failed to provide any time for Mr. Martin to comply with the "stop" command prior to discharging his vehicle in the back of Mr. Martin multiple times.

101.    Officer John Doe, did not comply with his police trainings and protocol pursuant to General Order 901.07 for the Metropolitan Police for the District of Columbia, nor General Orders 2103 and 2205 for the United States Park Police operating within the District of Columbia.

102.    Pursuant to General Order 901.07, "Members shall not use deadly force against a person unless the member reasonably believes that deadly force is immediately necessary to protect the member or another person from the threat of serious bodily injury or death, the member's actions are reasonable given the totality of the circumstances, *and all other options have been exhausted or do not reasonably lend themselves to the circumstances… To the greatest extent possible, members shall ensure that the use of deadly force presents no substantial risk of injury to innocent persons. Members shall not discharge their weapon into a crowd, as a signal for help, or as a warning shot.*

103.    Pursuant to General Order 2205 for the United States Park Police, "The act of fleeing and eluding the police shall not in itself be pursuable offense."

104.    Among many other reasons, Officer John Doe failed to exhaust any other means of de-escalation or pursuit of arrest as it lends itself to the situation. Given the fact he was told not to enter the vehicle and that if Mr. Marin attempts to flee, let him go. Officer John Doe shot and killed 17 year old Dalaneo Martin because Officer John Doe failed to properly assess the situation due to his rash decision making.

105.    Officer John Doe deprived Mr. Martin of his life by using excessive and unreasonable

force when he shot him without any justifiable reason to do so.

106.    Officer John Doe deprived Mr. Martin of his life by using excessive and unreasonable force when he shot Mr. Martin without proper warning, announcement or a reasonable time to comply.

107.    Officer John Doe failed to properly assess the situation due to his rash decision making and defiance of the orders from the commanding officer on the scene.

108.    The shooting of Mr. Martin was not privileged or otherwise justified and constituted the use of excessive force by Officer John Doe.

109.    As a direct and proximate result of the wrongful acts and omissions of the United States, by and through its employees, Dalaneo Martin suffered fatal injuries, resulting in his death.

110.    The wrongful death of Dalaneo Martin was a foreseeable and direct consequence of the United States' failure to exercise reasonable care in the planning and execution of law enforcement activities.

111.    As a result of Mr. Martin's wrongful death, Mr. Tyrell Jones and Next of Kin have sustained pecuniary loss, economic damages in loss, mental anguish, emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of filial care, loss of attention, loss of life, loss of counsel, loss of guidance, loss of company and loved ones.

112.    This Complaint is timely filed within two (2) years after the death of Mr. Martin pursuant to D.C. Code § 16-2702.

113.    The Estate is entitled to recover all damages permitted under the FTCA and the District of Columbia Wrongful Death Act for the benefit of the next of kin.

        WHEREFORE, Plaintiffs, pray for judgment against the Defendants in the amount of

$50,000,000.00 in compensatory damages and $50,000,000.00 in punitive damages.

## COUNT VI - ESTATE V. ALL DEFENDANTS
### Federal Tort Claims Act "FTCA" - Survival Action

114.    The Plaintiffs adopt and incorporate each and every allegation above as if fully stated herein.

115.    Tyrell Jones, as the mother of Dalaneo Martin and personal representative of the Estate of Dalaneo Martin, brings a survival action pursuant to the FTCA and the District of Columbia Survival Statute, D.C. Code §12-101; and brings claim for the conscious pain, suffering, anguish, reasonable and necessary medical expenses, inconvenience and discomfort, the amount of money that Plaintiff's decedent would have accumulated over the normal expected life time, and other economic and non-economic expenses, losses and damages sustained by Plaintiff's decedent, as allowed, under the D.C. Code §21-101.

116.    The FTCA authorizes recovery for personal injuries and damages suffered by a decedent prior to death, to the same extent as would be permitted under the law of the District of Columbia.

117.    Under D.C. Code § 12-101, a cause of action for personal injury survives the death of the person injured and may be maintained by the decedent's personal representative for the benefit of the estate. The Estate is entitled to recover damages for conscious pain and suffering, mental anguish, medical expenses, lost earnings, and other pecuniary and non-pecuniary losses sustained by Dalaneo Martin prior to his death.

118.    As a direct and proximate result of gross negligence and excessive force of the Defendant as set forth herein this Complaint and for which Dalaneo Martin would have been able to maintain an action against the Defendants had he lived. Mr. Martin sustain pain prior to suffering

his death on March 18, 2023.

119.    At all relevant times, the officer was employed by United States Park Police and operating within the District of Columbia and acted under color of state law and within the course and scope of his employment.

120.    Through their officers, the Metropolitan Police Department and United States Park Police officers deprived Mr. Martin of his life by using excessive and unreasonable force.

121.    As a direct and proximate result of the wrongful acts and omissions of the United States, by and through its employees, Dalaneo Martin suffered severe physical injuries, conscious pain and suffering, emotional distress, and mental anguish prior to his death. Mr. Martin experienced significant physical and emotional trauma as a result of being shot multiple times and the events leading up to his death.

122.    The actions of the Defendants, were the cause of Mr. Martin suffering permanent physical injuries leading to death, mental anguish, humiliation, loss of enjoyment of life, inability to perform and do normal activities, economic damages including, but not limited to, past and future medical bills and expenses, past and future lost time and wages, past and future earning capacity, all to the great detriment of the Plaintiff.

123.    The Estate has incurred and will continue to incur economic losses, including but not limited to medical expenses, funeral and burial costs, lost earnings and earning capacity, and other pecuniary damages resulting from Mr. Martin's injuries and death.

124.    The damages suffered by Dalaneo Martin and his Estate are recoverable under the FTCA and the law of the District of Columbia, as the United States is liable for the personal injuries and losses caused by the negligent and wrongful acts of its employees acting within the scope of their employment.

WHEREFORE, Plaintiffs, pray for judgment against the Defendants in the amount of $50,000,000.00 in compensatory damages and $50,000,000.00 in punitive damages.

## JURY DEMAND

Plaintiff, through counsel, requests a trial by jury as to all counts so triable.

Date Submitted: September 9, 2025                    ESTATE OF DALANEO MARTIN
                                                     By Counsel


*/s/ Andrew O. Clarke*
Andrew O. Clarke, Esquire
DC Bar No.: 1032649
DISTRICT LEGAL GROUP
163 Waterfront Street, Suite 440
National Harbor, MD 20745
T: (202)780-9144
E: aclarke@districtlegalgroup.com
*Counsel for Plaintiff*